# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | Case No.: 1:12-cv-01744 - LJO - JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| YISA GARCIA, | |
| Defendant. | (Doc. 39) |

Joe Hand Promotions, Inc. ("Plaintiff") seeks the entry of default judgment against defendant Yisa Garcia, individually and doing business as Carthage Café and Hookah Lounge ("Defendant"). (Doc. 9). Defendant has not opposed this motion.

Having reviewed the motion and supporting documents, the Court found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g). Therefore, the matter was taken under submission on March 25, 2013. (Doc. 13). For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED IN PART AND DENIED IN PART**.

## I.     Procedural History

Plaintiff asserts it possessed the exclusive rights to the nationwide commercial distribution of "Ultimate Fighting Championship 137: BJ Penn v. Nick Diaz" ("the Program"), televised on October 29, 2011. (Doc. 1 at 4). Plaintiff alleges Defendant intercepted and broadcast the Program without the permission of Plaintiff. *Id.* at 2. Accordingly, Plaintiff filed its complaint against Defendant on

1

October 25, 2012, alleging violations of 47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 533, *et seq.*; and the California Business and Professions Code § 17200, *et seq.* In addition, Plaintiff alleges Defendant is liable for wrongful conversion of property, arising under California State law. *Id.* at 4-8.

Plaintiff was served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, default was entered against Defendant pursuant to Fed. R. Civ. P. 55(a) for her failure to answer on January 31, 2013. (Docs. 6-7). Plaintiff filed an application for default judgment now pending before the Court on February 4, 2013. (Doc. 9).

## II.    Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III. Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 4). According to Joe Hand, Jr., President of Joe Hand Promotions, Inc., the company endeavors "to police [its] signals for the purpose of identifying and prosecuting establishments which pirate [the] programming," and "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates." (Doc. 12 at 2, Hand Decl. ¶¶ 5-6).

Plaintiff asserts Defendant "is an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Carthage Cafe and Hookah Lounge." (Doc. 1 at 3). Plaintiff alleges Defendant engaged in an act of signal piracy by broadcasting the Program in the establishment without purchasing a proper sublicense. *Id.* For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code. *Id.* at 4-8. In its application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 9-1). Therefore, the Court will address only these claims.

### IV. Application of *Eitel* Factors

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in favor of granting Plaintiff's motion for default judgment.

#### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to a plaintiff militates in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. In general, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *J & J Sports Prods. v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

3

B. Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See J & J Sports Productions v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

*Claim arising under 47 U.S.C. § 605*

The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, "prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3. In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the … contents … of such intercepted communication to any person." 47 U.S.C. § 605(a). Thus, the Communications Act requires Plaintiff to establish it was the party aggrieved by Defendant's actions. 47 U.S.C. § 605(e)(3)(A). A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6). In the Complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 4). Thus, the Court finds Plaintiff was the party aggrieved under the Communications Act.

In addition to establishing that it was a "person aggrieved," Plaintiff must show Defendant intercepted a wire or radio program and published it without Plaintiff's permission. 47 U.S.C. § 605(a). Plaintiff acknowledges that it "cannot determine the precise means that the Defendant[] used to receive the Program." (Doc. 9-1 at 8). Similarly, in *Hernandez*, the plaintiff was unable to identify the nature of the transmission.[1] As noted by the Court, "Plaintiff's inability to allege the precise nature of the intercepted transmission in this case . . . raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at

---

[1] The plaintiff in the matter now before the Court was represented by the same attorney, Thomas P. Riley. *See* No. 2:09-cv-3389 GEB KJN.

4

*10. Nevertheless, Plaintiff has provided evidence that Defendant broadcast in her establishment without purchasing a commercial license for the broadcast, because Plaintiff's investigator witnessed the Program on a 42" television at Carthage Café and Hookah Lounge. (Doc. 9-3 at 2).

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without Plaintiff's permission.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010) (citing *Don King Prods./ Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to possess the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the exclusive distribution right, Plaintiff held a "right to possession of property." In addition, Plaintiff has shown Defendant engaged in signal piracy by broadcasting the program without a sublicense. *See Phelan*, 2009 U.S. Dist. LEXIS 103626, at *34 (as evidence of distribution rights, the plaintiff provided a contract that on its face granted Plaintiff the exclusive right to license Golden Boy's telecast of a boxing match). Plaintiff's investigator estimated the establishment had a capacity of "40-50 people." (Doc. 9-3 at 3). The rate sheet attached to the affidavit of Mr. Hand indicates a sublicense would have cost $900.00 for an establishment with the capacity between 0-50 persons. (Doc. 12, Exh. 1). Consequently, Plaintiff has established damages in the amount of $900.00, and has stated a claim for conversion against Defendant.

C.     Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for compensatory damages for Defendant's tortuous conversion of Plaintiff's property. (Doc. 9-1 at 20). Also, Plaintiff seeks statutory damages totaling $110,000 for the violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. *Id.* at 11-19. Plaintiff acknowledges Defendant would have been required to pay $900.00 to broadcast the program at the establishment, but asserts Defendant should be required to pay the statutory maximum because nominal damages have proven insufficient to combat piracy. *Id.* at 19-20. Thus, Plaintiff appears to concede that amount of damages requested is not proportional to Defendant's conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); *but see Hernandez*, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). However, as discussed below, the Court declines to enter judgment in the amount requested. Therefore, the factor does not weigh against Plaintiff's request for default judgment.

D.     Possibility of dispute concerning material facts

The Court considers also the possibility of dispute as to any material facts in the case. Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant has failed to defend the case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. Therefore, this factor does not weigh against entry of default judgment.

E.     Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. In this case, Defendant was served with the Summons and Complaint, as well as the motion for default judgment. (*See* Doc. 9-1 at 23). Given these facts, it is unlikely that Defendant's actions were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor does not weigh against default judgment.

F.     Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendant's failure to answer the Complaint makes a decision on the merits impractical. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment.

**V.     Damages**

Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a violation of the Communications Act and the tort of conversion. Therefore, Plaintiff is entitled to damages based upon Defendant's act of signal piracy. Plaintiff argues that "it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendants' [sic] unlawful actions." (Doc. 9-1 at 9-10). As noted, Plaintiff requests the statutory maximum, including enhanced damages for violation of the Communications Act, and damages for the tort of conversion, bringing the total requested to $110,900.

A.     Statutory Damages

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If a court finds a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. *Id.* at § 605(e)(3)(C)(ii).

1  Plaintiff's investigator estimated Carthage Café and Hookah Lounge had a capacity of 40-50
2  people, and each of three headcounts revealed 11 people were present. (Doc. 9-3 at 3). No cover
3  charge was required for entry. *Id.* at 2. The program was shown on a single 42" television[2] "mounted
4  on one wall of the lounge." *Id.* In addition, the investigator observed "an advertisement poster for PPV
5  UFC 137 Fight was posted on the door" as he entered the lounge. *Id.* There is no evidence regarding
6  food or drink prices, or that Defendant engaged in signal piracy on other occasions.

7  As noted above, Plaintiff argues that it is entitled to the maximum statutory damages of $10,000
8  for Defendant's wrongful interception and broadcast of the Program. In support of this assertion,
9  Plaintiff identifies several cases from this district awarding the statutory maximum, including: *Joe
10 Hand Promotions, Inc. v. Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, 2009 WL 1845090 (E.D. Cal. June
11 26, 2009) (awarding $10,000 in damages under §605 where there were two televisions, the capacity
12 was fifty people, and there were between 23 and 29 patrons); *J & J Sports Productions v. Esquivel*,
13 2008 U.S. Dist. LEXIS 92140, 2008 WL 4657741 (E.D. Cal. Oct. 20, 2008) (awarding $10,000 under
14 both §553 and §605, plus enhanced damages where the capacity was 75 people, there were 35
15 individuals present, and the program was shown on a single 27" television); *J & J Sports Productions,
16 Inc. v. Flores*, 2009 U.S. Dist. LEXIS 54676, 2009 WL 1860520 (E.D. Cal. June 26, 2009) (awarding
17 $10,000 in damages under §605 and an additional $10,000 under §553 where there were between 33
18 and 35 people present and there was no cover charge); *J & J Sports Productions, Inc. v. George*, 2008
19 U.S. Dist. LEXIS 85770, 2008 WL 4224616 (E.D. Cal. Sept. 15, 2008) (awarding $10,000 under both
20 §553 and §605 where the establishment had a capacity of 30 people and 20 were present, there was a
21 single television and no entry fee, but not stating whether the award included enhanced damages).[3]

---

[2] Plaintiff asserts that "Defendant broadcasted the *Program* on two televisions." (Doc. 9-1 at 11). Although two televisions were mounted on the wall at Defendant's establishment, the investigator noted the fight was shown on "one of the two TV's [sic]." (Doc. 9-3 at 2).

[3] In *Flores*, which awarded damages under both §553 and §605, it is not clear whether the $10,000 award was for statutory damages alone or included enhanced damages. *See Flores*, 2009 U.S. Dist. LEXIS 54676, at *5. Likewise, as acknowledged by Plaintiff, in both *Esquivel* and *George*, the Court awarded damages under both §553 and §605 without analyzing the propriety of cumulative damages for violations of both statutes.
Since the decisions in *Flores* and *George*, many courts have determined a plaintiff should not be permitted to recover under both § 553 and § 605, though the Ninth Circuit has yet to address this question. This Court observed, "Although some courts, including some in the Eastern District of California, have multiplied awards when a defendant is liable under both provisions, the majority of courts in the Ninth Circuit and elsewhere have imposed damages only pursuant

8

Though Plaintiff asserts these cases are comparable to the matter now pending before the Court, several factors distinguish the matter. For example, each of the above establishments had approximately twice as many patrons as Carthage Café and Hookah Lounge, where only 11 individuals were present. Further, in *Tidmarsh*, the investigator rated the establishment as "excellent" and "noted it contained two pool tables and various video games at the back [with] a large television on one side of the establishment and a second, much smaller television on the opposite side." *Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, at *9. In contrast, here the investigator described the establishment as "fair," and the broadcast appeared on only one of the two televisions. (Doc. 9-3 at 2).

Significantly, the Ninth Circuit observed, "The range in the statutory award might allow for a sanction that deters but does not destroy." *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009). Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g., J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 under §605 and $1,800 for conversion, for a total of $5,400 that equaled "three times Plaintiff's actual damages"); *Joe Hand Promotions v. Brown*, 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where there were 13-17 patrons present, the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010) (awarding $1,000 in statutory damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no admission fee was charged, and the program was displayed on a single television). Here, the establishment was small and few patrons were present. However, Defendant advertised the Program broadcast in the entry of the establishment. Consequently, the Court finds $5,000 is an appropriate award in statutory damages.

///

---

to one of the two sections." *Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010). Regardless, here, Plaintiff seeks damages under only § 605.

9

B.     Enhanced Damages

Asserting a right to enhanced damages, Plaintiff urges the Court to find the broadcast of the Program was willful and for the purposes of financial gain. (Doc. 9-1 at 14-17). However, allegations regarding the amount of damages must be well-plead and supported by factual allegations. *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560. "The mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *Sorondo*, 2011 U.S. Dist. LEXIS 99951, at *10 (quoting *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Here, Plaintiff alleged: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by the Defendant was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (Doc. 1 at 4-5). However, there are no factual allegations in the complaint to support the conclusion that Defendant's actions were willful or for the purpose of financial gain. Recently, the Court explained:

> To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for his or her claim. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678. A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-56 (internal quotation marks and citations omitted). In its complaint, Plaintiff simply alleged a legal conclusion: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by each of the Defendant [sic] was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."

*Hathcock*, 2012 U.S. Dist. LEXIS 101208, at *2-3. Consequently, the Court found Plaintiff "failed to allege facts establishing the grounds of entitlement to enhanced damages." *Id.* at *3. Significantly, the complaint in *Hathcock* contained the same language as the complaint now before the Court, and suffers the same infirmities, and enhanced damages are not recommended.

C.     Damages for Conversion

Plaintiff requests $900.00 for damages for the tort of conversion. (Doc. 9-1 at 20). As discussed above, Defendant would have been required to pay $900.00 for the sublicense, and Plaintiff is entitled to this amount. *See, e.g., Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *6 (calculating damages

for conversion based upon the amount defendants would have been required to pay for a broadcasting sublicense); *Brown*, 2010 U.S. Dist LEXIS 119435, at *16-17; *but see J &J  Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (declining conversion damages statutory damages "sufficiently compensate[d]" the plaintiff).  Therefore, the Court recommends $900.00 be awarded in damages for the tort of conversion.

### IV.     Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  *See Aldabe*, 616 F.2d at 1092.  However, the damages requested are disproportionate to Defendant's actions.  Importantly, when determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs."  *Backman*, 102 F.Supp.2d at 1198.  Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation."  *Id.*

Accordingly, the Court recommends the award of $5,000 for the violation of § 605, and $900.00 for the tort of conversion, for a total award of $5,900.  This amount, which is more than three times the cost of a proper sublicense for the Program, both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy.  *See Lake Alice Bar*, 168 F.3d at 350 (observing that a lower statutory award may deter while not destroying a business).

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's application for default judgment (Doc. 39) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:

    A. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $5,000;

    B. Plaintiff's request for enhanced damages be **DENIED**;

    C. Plaintiff's request for damages for the tort of conversion be **GRANTED** in the amount of $900.00; and

2. Plaintiff be directed to file any application for attorney's fees pursuant to 47 U.S.C. § 605 not later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 26, 2013**                    **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE